EWING WERLEIN, JR., UNITED STATES DISTRICT JUDGE
Pending are Defendant's Motion for Summary Judgment (Document No. 19) and Plaintiff's Motion to Strike (Document No. 23). After carefully considering the motions, responses, reply, and the applicable law, and having conducted a hearing to receive oral arguments, the Court concludes as follows.
I. Background
In June 1996, Plaintiff DeWayne Barfield ("Plaintiff") applied for employment with Defendant Federal Express Corporation ("Defendant").[1] As part of his application, Plaintiff executed an employment *1045 agreement ("the Employment Agreement") that includes in its fifteenth and final provision:
To the extent the law allows an employee to bring legal action against Federal Express Corporation, I agree to bring the complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.[2]
Directly beneath this provision is the concluding sentence, "I have read this entire Agreement, which consists of 2 pages, and I thoroughly understand the content," followed by Plaintiff's signature.[3] Upon being hired, Plaintiff worked as a courier for Defendant for more than 2 0 years until Defendant terminated him on January 16, 2017, for allegedly violating Defendant's Vehicle Accidents/Occurrences Policy and Acceptable Conduct Policy.[4]
At the time of his termination, Plaintiff was 58 years old.[5] Several months before his termination, Plaintiff alleges, his Senior Manager Jim Gleissner directed frequent age-related comments toward him and other employees.[6] These comments included Gleissner saying he would get rid of employees if they were getting too old and that management would always be able to find someone better to replace them.[7]
On January 11, 2017, while operating Defendant's vehicle in an employee parking area at the end of his shift, Plaintiff accidentally struck co-worker Troy Ross's parked personal vehicle.[8] Plaintiff got out of the truck he was driving, surveyed the damage to Ross's vehicle, returned to the truck and parked to the side to avoid obstructing the way.[9] Without leaving Defendant's premises, Plaintiff went to the office of his operations manager, Aaron Gilbert, to report the incident.[10] Gilbert was not in his office.[11] Plaintiff went to the front of the office and had the staff page Gilbert.[12]
Citing stomach issues and his nerves resulting from the accident, Plaintiff then used the restroom for four to five minutes.[13] After exiting the restroom, Plaintiff *1046 returned to Gilbert's office but Gilbert was still absent.[14] Plaintiff returned to the parking lot where he saw Gilbert as well as his co-worker Troy Ross surveying the damage to Ross's vehicle.[15] Plaintiff stood with Gilbert and Ross as they discussed the situation.[16] Plaintiff observed that Ross was very upset.[17] Ross testifies that has been "known to get upset" and knows he "can be intimidating" when upset.[18] Plaintiff states he feared a "physical altercation" and therefore did not report his involvement or say anything regarding the accident as he stood next to the two men.[19] Plaintiff silently followed them back to Gilbert's office and then waited in his personal vehicle until Ross had left.[20] After seeing Ross leave, Plaintiff called and reported all information regarding the accident to Gilbert.[21] Plaintiff made this report more than an hour after the accident but did not leave Defendant's premises at any point before making this report.[22]
The morning after the accident, Plaintiff's Manager Joanne Martinez notified Plaintiff that he was suspended with pay pending investigation of the incident.[23] Four days later, Martinez notified Plaintiff that his employment was terminated. Mr. Gleissner, the Senior Manager who allegedly made frequent age-related comments to Plaintiff and his co-workers, had some participation in Plaintiff's termination, at least to the extent of approving Martinez's draft termination letter and forwarding it to his own supervisor.[24] The stated reason for Plaintiff's termination was failure to notify management about the accident at the time it occurred in violation of Defendant's Acceptable Conduct Policy.[25]
Defendant's Acceptable Conduct Policy lists "[f]ailure to report a vehicle accident in accordance with 8-90 Vehicle Accidents/Occurrences *1047 and 4-48 Driving Qualifications" as "Misconduct" which "may result in severe disciplinary action up to and including termination."[26] The referenced Vehicle Accidents/Occurrences Policy defines an employee's responsibility for reporting accidents as follows:
The operator of a revenue road licensed vehicle (i.e. Company-owned, rented, or leased) must report to a member of their management or dispatch, if management is not available, any accident/occurrence of a vehicle coming in contact with an object, property, or person .... The driver is not to leave the scene of the accident without management approval.[27]
The Vehicle/Accidents Conduct Policy also states that "[f]ailure to report an accident or occurrence immediately in accordance with this policy" is a "serious violation [ ] of safety regulations" for which "severe disciplinary action up to and including termination" can result.[28]
After he received notice of termination, both Plaintiff's Manager Joanne Martinez and his Senior Manager Jim Gleissner encouraged Plaintiff to participate in the Guaranteed Fair Treatment Process ("GFTP"), an internal review mechanism available to employees.[29] The third and final stage of this process consisted of a review by an internal appeals board on March 7, 2017, after which the appeals board upheld Plaintiff's termination.[30] Plaintiff states that after he learned that he would not be reinstated, he began to reflect on the comments Gleissner had made about age as well as what Plaintiff understood about older employees receiving higher pay and more benefits.[31] Plaintiff believes it would make a senior manager like Gleissner "look good" to get rid of an employee with Plaintiff's higher wage rate and benefits package.[32] Plaintiff further offers examples of younger employees who were cited for the same violation of company policy--failure to report an accident in a timely manner--but were not terminated.[33]
Plaintiff filed his EEOC charge on or about April 10, 2017, alleging that Defendant discriminated against him on the basis of age.[34] In addition to discussing the accident and termination in his EEOC charge, Plaintiff refers to Gleissner's alleged age-related comments made several months before his termination.[35] The EEOC issued to Plaintiff its Notice of Right to Sue and Plaintiff filed this lawsuit on August 6, 2017, alleging violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq.[36]
*1048 II. Legal Standard
Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id."[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id."A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record ... or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c) (1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c) (3).
In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S.Ct. at 2513.
III. Evidentiary Objections
Defendant moves to strike the affidavit of Troy Ross under FED. R. CIV. P. 56(c) (4), which requires that an affidavit submitted in support of or opposition to a motion for summary judgment "must be made on personal knowledge."[37] Defendant argues that a number of assertions in Ross's affidavit fail to meet this requirement. Having reviewed these statements, the motion is GRANTED in part as to the following statements, which are STRICKEN for want of personal knowledge:
¶ 4: "I do not think Barfield should be terminated. It was an accident and he reported it."
¶ 9: "I understand Barfield had trouble finding Aaron Gilbert, who was the only manager on duty that evening)."
¶ 10: "Although I did not hear them myself, it does not surprise me that Gleissner made negative comments about age to Barfield and others.... Gleissner's harassment seemed to be directed more to older employees, including Foster Young, Steve Hernandez, and Sylvia Ramos. Young and Ramos retired before they otherwise would have because of Gleissner's treatment of them."
Defendant's motion to strike Ross's affidavit is otherwise denied.
*1049 Defendant's additional argument that the entirety of the affidavit should be struck on the grounds of "fundamental fairness" is based on its erroneous belief that discovery had closed by the time Plaintiff revealed his intent to obtain a statement from Ross. As Plaintiff correctly notes in his response, the Court's April 11, 2018 Mediation Order suspended the deadline to complete discovery, until the close of mediation.[38] The mediation had not yet been held and the discovery period was still open when Plaintiff obtained the statement. Defendant's motion to strike the entire affidavit on grounds of "fundamental fairness" is without merit and is denied.
IV. Discussion
A. Contractual Limitations Bar
Defendant argues that Plaintiff's claim is legally barred by the six-month contractual limitation set forth in Plaintiff's Employment Agreement with Defendant.[39] The provision required Plaintiff to bring a "complaint within the time prescribed by law or 6 months from the date of the event forming the basis of [his] lawsuit, whichever expires first."[40] Plaintiff does not deny agreeing to the six-month limitation period when he signed his Employment Agreement nor does he make an argument premised on traditional defenses to contract.[41] Plaintiff instead argues that the provision at issue is unenforceable because it is contrary to the weight of law and public policy.[42]
It is well-established that "a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." Order of United Commercial Travelers of Am. v. Wolfe, 331 U.S. 586, 67 S.Ct. 1355, 1365, 91 L.Ed. 1687 (1947). To determine whether a contractual limitations clause is enforceable, the district court must decide for each cause of action whether the statute at issue proscribes a contractual limitations clause and whether the limitations cause of action is reasonable under the circumstances. Morgan v. Federal Express Corp., 114 F.Supp.3d 434, 442-43 (S.D. Tex. 2015) (Harmon, J.) (citing Wolfe, 67 S.Ct. at 1365 ). See also Mazurkiewicz v. Clayton Homes, 971 F.Supp.2d 682, 686 (S.D. Tex. 2013) (Costa, J.) ("[W]hen these provisions effectively limit a plaintiff's substantive right to recovery or act as a complete bar to relief, they are not reasonable.").
For instance, courts considering employment discrimination claims brought under 42 U.S.C. § 1981 have generally held that a contractual six-month limitations period is a reasonable amount of time both because nothing in Section 1981 indicates that Congress intended for a longer window to bring such a claim, and also because the statute lacks other features that would make filing a claim within six months impracticable, such as a lengthy administrative exhaustion requirement. See Taylor v. W. & S. Life Ins. Co., 966 F.2d 1188, 1205 (7th Cir. 1992) ;
*1050 Thurman v. DaimlerChrysler, Inc., 397 F.3d 352, 357-59 (6th Cir. 2004) ). See also Morgan, 114 F.Supp.3d at 444 (finding a six-month limitations period enforceable with respect to an employee's Section 1981 claim); Njang v. Whitestone Grp., Inc., 187 F.Supp.3d 172, 178 (D.D.C. 2016) (noting the general trend of courts finding six-month limitations periods reasonable for Section 1981 claims). On the other hand, because of "an expansive and intricate exhaustion requirement, the majority of courts that have considered the issue of contractual limitations periods have found that a six-month contractual limit with respect to filing a Title VII claim in court is unreasonable." Njang, 187 F.Supp.3d at 180 (citing Mazurkiewicz v. Clayton Homes, 971 F.Supp.2d at 688-89 ); but see Thurman, 397 F.3d at 358 (upholding dismissal of Title VII claims as barred by reasonable six-month contractual limitations period).
Plaintiff's claim is brought under the ADEA, a federal statute with an exhaustion requirement that falls somewhere in between Section 1981, which contains no exhaustion requirement, and Title VII, under which a complainant may bring a claim in federal court only after receiving a right-to-sue notification from the EEOC, a process that typically requires waiting at least 180 days after filing a charge with the EEOC. See 42 U.S.C. § 2000e-5 ; Occidental Life Ins. Co. of Cal., 432 U.S. 355, 97 S.Ct. 2447, 2452, 53 L.Ed.2d 402 (1977). A person seeking relief under the ADEA must first file an administrative charge with the EEOC, within 300 days of the last act of discrimination. 29 U.S.C. § 626(d) ; Julian v. City of Houston, Tex., 314 F.3d 721, 725-26 (5th Cir. 2002). Unlike Title VII, however, a "right to suit notice is not a prerequisite to filing an ADEA action." Julian, 314 F.3d at 727. Rather, "[u]nder the plain language of § 626(d), the claimant's independent right to sue arises automatically upon the expiration of sixty days after filing of the charge with the EEOC." Id.; 29 U.S.C. § 626(d). "Accordingly, a complainant who timely files the EEOC charge and then observes the sixty day waiting period has satisfied the statutory preconditions to filing suit." Julian, 314 F.3d at 726. Plaintiff's assertion that he could not file his ADEA suit before receiving a right to sue letter is incorrect as a matter of law.
This distinction is critical to the reasonableness of the contractual limitations period at issue. While a complainant filing a Title VII claim may be required to wait at least six months after filing an EEOC charge to receive a right-to-sue notification, effectively abrogating his ability to bring a claim within the contractually shortened period, an ADEA-complainant may bring a claim only sixty days after filing an EEOC charge. Indeed, courts examining the very six-month limitations provision at issue in this case have found it enforceable in the ADEA context. See Ray v. Fedex Corporate Servs., 668 F.Supp.2d 1063 (W.D. Tenn. 2009) ; Dekarske v. Federal Express Corp., 294 F.R.D. 68 (E.D. Mich. 2013) ; see also Cerjanec v. FCA US, LLC, No. 17-10619, 2017 WL 6407337, at *8 (E.D. Mich. Dec. 15, 2017) (enforcing a similar contractual six-month limitations period for an ADEA claim); but see Sanford v. Quicken Loans, No. 12-11929, 2014 WL 266410 (E.D. Mich. 2014) (holding six-month contractual limitations period unenforceable for an ADEA claim),[43] Considering *1051 the statutory language and the practical effects of the limited administrative process required before a complainant may bring suit, a contractual six-month limitations period is reasonable in the context of an ADEA claim.
The facts in Plaintiff's case demonstrate that the six-month contractual limitations period did not prevent him from filing his ADEA lawsuit. Pursuant to the agreement he executed with Defendant, Plaintiff had six months from the "date of the event forming the basis of [his] lawsuit," to "bring legal action against [Defendant]."[44] In other words, in the context of an ADEA claim this provision required Plaintiff (1) to file his EEOC charge, (2) to wait for at least sixty days, and (3) then file his lawsuit within six months after the date of his termination. Plaintiff had time to fulfill all statutory preconditions to filing an ADEA claim and to file his claim within this contractually established period, even considering that he did not file his EEOC charge until April 10, 2017, after engaging in an optional termination internal review process. Plaintiff's First Amended Complaint alleges no discrimination against him except for terminating him on January 16, 2017 because of his age.[45] Plaintiff filed *1052 his EEOC charge on April 10, 2017. Sixty days after this date, on June 9, 2017, Plaintiff was entitled to file a complaint in federal court, having fulfilled all statutorily required preconditions for his sole ADEA claim. The six-month contractual limitations period expired on July 16, 2017. Plaintiff did not file his legal action until August 6, 2017, 21 days after it was barred by the six-month limitation period to which he agreed in his Employment Agreement.[46] Plaintiff's ADEA claim is time barred.
B. Discrimination Under the ADEA
If not time-barred, however, Defendant correctly argues it would still be entitled to summary judgment on the merits. The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an individual because of that person's age. 29 U.S.C. § 623(a)(1) ; Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). Unlawful discrimination under the ADEA may be established through either direct or circumstantial evidence. Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004). Plaintiff argues that he has raised a genuine issue of material fact to survive summary judgment through both direct and circumstantial evidence.
Plaintiff argues that Gleissner's alleged comments to Plaintiff and other employees that Defendant would get rid of them if they were getting too old constitute direct evidence of age discrimination. "Direct evidence" must be "unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." Moss v. BMC Software, Inc., 610 F.3d 917, 929 (5th Cir. 2010). Where, as here, a plaintiff offers workplace remarks as direct evidence of age discrimination, such remarks are sufficient to preclude summary judgment if they are (1) age related, (2) proximate in time to the termination, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. Reed v. Neopost USA, Inc., 701 F.3d 434, 441 (5th Cir. 2012). Comments that do not meet these criteria are "stray remarks" that fail to create a factual dispute about the employment decision. Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 343 (5th Cir. 2002).
While age-related, Gleissner's comments are too attenuated from the decision to terminate Plaintiff to constitute "direct evidence" of the age discrimination Plaintiff alleges. Plaintiff alleges that Gleissner made the comments "several months" before the termination and directed them to a group of employees.[47] The comments are not shown to have been *1053 proximate to nor related to Plaintiff's accident or termination. Thus, Gleissner's alleged comments, by themselves, do not allow a jury to conclude without inference that age was an impermissible factor in the decision to terminate Plaintiff and thus do not rise to the level of "direct evidence." See Berquist v. Wash. Mut. Bank, 500 F.3d 344, 352 (5th Cir. 2007) ("Unlike other cases in which we have considered remarks as evidence of discriminatory intent, this comment was a broad statement not directed to any particular employee about [the employer's] management goals and remote in time from [the plaintiff]'s firing."); Goudeau v. Nat'l Oilwell Varco, L.P., 793 F.3d 470, 475 (5th Cir. 2015) ("[Remarks submitted as direct evidence of discrimination] defeat summary judgment--that is to serve as sufficient evidence that by itself would allow a jury to find discriminatory motive--only if they are not stray, but instead are tied to the adverse employment action at issue both in terms of when and by whom they were made.").
In the absence of direct evidence of age discrimination, the Court uses the familiar burden-shifting framework under McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See, e.g. , Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010) ; Berquist, 500 F.3d 344, 349 (5th Cir. 2007). Under this framework, the plaintiff must first create a presumption of unlawful discrimination by presenting evidence of a prima facie case. A prima facie case of age discrimination is established if the plaintiff shows that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." Berquist, 500 F.3d at 349.
After making this prima facie showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). If the employer can articulate such a reason, the inference of discrimination falls away, and the burden shifts back to the plaintiff to establish that the employer's proffered reason is merely a pretext for discrimination. Id."[A] plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.' " Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003) (quoting Reeves, 120 S.Ct. at 2106 ). A plaintiff's own subjective beliefs regarding Defendant's discriminatory intent, however, do not raise a genuine issue of material fact on the issue of pretext. See Price v. Marathon Cheese Corp., 119 F.3d 330, 337 (5th Cir. 1997). "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009). The ultimate burden of persuasion remains on the plaintiff to "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Id.; Moss, 610 F.3d at 922.
Defendant argues that Plaintiff cannot establish a prima facie case of age discrimination with respect to his termination. Even assuming that Plaintiff can do so, however, Defendant produces evidence of a legitimate, nondiscriminatory reason for Plaintiff's termination: Plaintiff *1054 violated Defendant's Acceptable Conduct and Vehicle Accidents/Occurrences Policy by not reporting his accident immediately. Therefore, Plaintiff must proffer sufficient evidence to create a genuine issue of material fact as to whether Defendant's stated reason for terminating him was a mere pretext for discrimination.
Plaintiff first argues that Defendant's proffered explanation is false because Defendant's Vehicle Accidents/Occurrences Policy 8-90 did not require Plaintiff to report the accident "immediately" and hence that Plaintiff did not violate the policy. Plaintiff cites a portion of this document and emphasizes that the word "immediately" does not appear in the section outlining an employee's responsibility to report accidents.[48] However, the word "immediately" does appear in the same policy document under a section entitled "Violations of Safety Regulations/Discipline."[49] There, the policy document states that "[f]ailure to report an accident or occurrence immediately in accordance with this policy" is a "serious violation[ ]" that "result[s] in severe disciplinary action up to and including termination."[50] It is undisputed that an hour and twenty minutes elapsed between the accident and the time Plaintiff reported it to management, including a period of time when Plaintiff even stood by silently while Defendant's operations manager himself, Mr. Gilbert, and co-employee Ross surveyed and discussed the damage done to Ross's vehicle by a driver at that time unknown to either of them. Therefore, by the express terms of Defendant's policy, Plaintiff committed a "serious violation" for which termination was an available repercussion.
Plaintiff then argues that assuming Plaintiff violated Defendant's policy, Plaintiff's evidence of discriminatory comments and disparate treatment establishes that Plaintiff's termination was discriminatory. "Stray remarks" rejected as direct evidence, while insufficient to defeat summary judgment on their own, may still be used to demonstrate pretext or be offered as additional circumstantial evidence alongside other discriminatory conduct. Goudeau, 793 F.3d at 475-76. To be considered as "relevant evidence in the broader circumstantial case," such comments need only evince "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." Id.; Reed, 701 F.3d at 441. Gleissner's alleged "frequent" comments about getting rid of employees if they get too old, which he made "several months" before Plaintiff's termination satisfy this lesser standard. However, additional evidence is needed to create a fact issue regarding discriminatory intent. See Jackson, 602 F.3d at 380.
As additional circumstantial evidence in support of his contention of discriminatory and disparate treatment, Plaintiff presents five comparators who are younger than Plaintiff and were involved in vehicle violations but not terminated. In order to support a claim that he was discriminated against compared to "similarly situated," younger employees, Plaintiff must show that he and his proposed comparators shared "nearly identical circumstances." Berquist, 500 F.3d at 353. "Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in *1055 time from that taken against the plaintiff generally will not be deemed similarly situated." Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).
Two of Plaintiff's putative comparators were involved in accidents far too remote in time to be considered as having "nearly-identical" circumstances. Lori King and Jeff Moncrief were involved in accidents more than a decade before Plaintiff's and therefore do not serve as adequate comparators.[51] "Employee No. 8" and Brandon Ashlock worked at different work stations and had different supervisors and chains of command.[52] Walter Lee does appear to have worked at the same work station and shared several supervisors with Plaintiff, including Gleissner.[53] However, the circumstances of his offense are quite distinguishable. Lee was issued a warning letter for failing to notify management promptly after being involved in an accident, but the facts in Lee's incident, according to the warning letter, were that when crossing an intersection, Lee swerved to avoid a vehicle speeding through a stop sign and hit a pole.[54] Unlike Lee, who reacted to another driver's reckless driving and who caused no damage to another vehicle, Plaintiff negligently hit and damaged another person's parked vehicle, a more serious encounter, for which management legitimately may have greater need for prompt notice. Moreover, while Plaintiff alleges that he "thinks" Lee is "young" based on what he has heard, there is no summary judgment evidence of Lee's age at the time of his incident.[55] Finally, "Employee No. 7" worked at a different work station and was involved in an accident in which, unlike Plaintiff's, no other vehicle was struck.[56] Plaintiff has thus failed to produce summary judgment evidence of similarly situated individuals outside his protected class who were treated differently than he was in incidents involving "nearly identical" circumstances.
"At the end of the day, the pretext inquiry asks whether there is sufficient evidence ... to allow the jury to find that discrimination was the but-for cause of termination." Goudeau, 793 F.3d at 478. In this case, Defendant has presented a legitimate, nondiscriminatory reason for Plaintiff's termination, namely that Plaintiff violated written company policy by failing to report an accident immediately. Plaintiff has failed to present evidence sufficient to demonstrate that Defendant's reason was pretextual. Gleissner's alleged statements, standing alone, do not create a genuine fact issue regarding whether defendant's termination of Plaintiff was on the basis of age discrimination. See Jackson, 602 F.3d at 380. Neither the putative comparators presented by Plaintiff nor Plaintiff's own subjective beliefs regarding Defendant's discriminatory intent raise a genuine issue of material fact on the issue of pretext.
Accordingly, it is
ORDERED that Defendant Federal Express Corporation's Motion for Summary Judgment (Document No. 19) is GRANTED and Plaintiff's claims are DISMISSED on the merits with prejudice.
A Final Judgment will be entered separately.
The Clerk will enter this Order, providing a correct copy to all counsel of record.

Document No. 21, Ex. A at 10 of 19.

Id. This Employment Agreement, as provided by Defendant in support of its motion for summary judgment, is missing its first page. At the motion hearing, counsel for Defendant explained that the original first page had been lost when Defendant transferred its paper files to an electronic database. After the hearing, Defendant filed an unopposed motion to supplement the summary judgment record with a copy of a form employment agreement from the time that Plaintiff was hired, verified by the unique form identification number to be the same form that Plaintiff received and signed. The Defendant moved to supplement the record with this document (Document No. 30). The Court granted Defendant's motion (Document No. 31) and considers both pages of the agreement in construing the meaning of its provisions.

Document No. 21, Ex. A at 10 of 19.

Document No. 8 ¶¶ 1, 2, 5 (Pl.'s Am. Compl.); Document No. 21, Ex. 4 (Vehicle Accidents/Occurrences Policy), Ex. 5(Acceptable Conduct Policy), Ex. 17 (termination notice), Ex. 20 (termination appeal decision-step 1), Ex. 23 (termination appeal decision-step 2).

Document No. 8 ¶ 16.

Document No. 22, Ex. 2 (EEOC charge); ids="3921138" index="69" url="https://cite.case.law/f3d/602/374/#p378">id., Ex. 1 at 203:12-16, 207: 3-6.

Document No. 22, Ex. 2; ids="3921138" index="70" url="https://cite.case.law/f3d/602/374/#p378">id., Ex. 1 at 203:12-16, 207: 3-6.

Id., Ex. 1 at 99:1-25 (Dep. of Dewayne Barfield).

Id., Ex. 1 at 100:1-23.

Id., Ex. 1 at 100:15-17, 101:2-25.

Id., Ex. 1 at 101:2-25.

Id.

Id., Ex. 1 at 101:18-22; Document No. 8 ¶ 23.

Document No. 22, Ex. 1 at 101:22-25.

Id., Ex. 1 at 102:1-3.

Id., Ex. 1 at 102:5-25, 103:1-15.

Id., Ex. 1 at 102:5-8.

Id., Ex. 7 (Aff. of Troy Ross).

Id., Ex. 1 at 116:1-12.

Id., Ex. 1 at 114:18-25, 115:1.

Id., Ex. 1 at 114:11-17.

Id., Ex. 1 at 114:25; Document No. 21, Ex. 15.

Document No. 22, Ex. 1 at 123:1-25.

Id., Ex. 20. Defendant objects that the email is not authenticated and inadmissible hearsay. The email exchange between Gleissner and others appears to have been produced in discovery. While the fact "that a document was produced in discovery by the opposing party, alone, is not conclusive as to its authenticity .... [a]dditional factors may buttress authentication, e.g., the producing party does not claim that document is not authentic." BP Expl. & Prod. Inc. v. Cashman Equip. Corp., No. H-13-3046, 2016 WL 1387907, at *3 (S.D. Tex. Apr. 8, 2016) (Harmon, J.). Defendant does not allege that the exchange is inaccurate. Moreover, the email exchange contains "distinctive characteristics" that can satisfy the authentication requirement. See Fed. R. Evid. 901(b)(4). For instance, the participants in the email exchange are clearly identified by first and last name and use identifiable work emails, and the emails contain a company logo in one participant's signature block. Regarding Defendant's hearsay objection, the statements within the emails are not introduced to prove the truth of the matter asserted but rather introduced to show that Gleissner was involved in reviewing Plaintiff's termination and are therefore not hearsay. See Fed. R. Evid. 801(c)(2). Even if the emails were introduced for the truth of the matter asserted, they would qualify as business records. See Fed. R. Evid. 803(6).

Id., Ex. 1 at 134:8-25. Document No. 22, Ex. 21.

Document No. 21, Ex. 5 at 2 of 14. Defendant does not challenge Plaintiff's driving qualifications and Section 4-48 Driving Qualifications is not in the record.

Id., Ex. 4 at 2 of 6. This provision also notes that there are additional reporting requirements for "serious accidents" defined in the same policy documents as accidents resulting in bodily injury, the totaling of a vehicle, or a fatality. This accident was not "serious," as so defined.

Id., Ex. 4 at 5 of 6.

Document No. 22, Ex. 1 at 136:14-23.

Document No. 21, Ex. 23.

Document No. 22, Ex. 1 at 74:4-16, 187:23-25, 188:1-23.

Id. at 193:2-16.

Document No. 22 at 21-22; Document No. 22, Ex. 1 at 243:19-25, 244:1-25, 245:1-25, 246:1-2.

Document No. 22, Ex. 2 (EEOC charge).

Id.

Document No. 8 ¶ 41; Document No. 1 (Orig. Compl.).

See Document No. 23 (Def.'s Motion to Strike); Document No. 22, Ex. 7.

See Document No. 16 (Mediation Order).

Document No. 20 at 8-10.

Document No. 21, Ex. A at 10 of 19.

Plaintiff states in passing that the provision was "inconspicuous" but the entire agreement was two pages, and the provision in question appeared directly above the sentence confirming that Plaintiff had read and understood the entirety of the agreement and the signature block where Plaintiff signed and dated the document. Document No. 21, Ex. A at 10 of 19.

Document No. 22 at 9.

Sanford disagreed with cases differentiating between Title VII and ADEA cases because that court viewed both statutes as evincing an intent not to force plaintiffs to file actions before the EEOC proceeding is concluded. This reasoning seems not to recognize significant differences between the two statutes. True, the EEOC is given "first crack" at resolving both ADEA and Title VII claims. But the ADEA gives the EEOC 60 days of exclusive jurisdiction to do so whereas Title VII gives the EEOC 180 days of exclusive jurisdiction to resolve the claim. This statutory difference matters in determining whether a given contractual limitations period is reasonable.

Plaintiff argues that the filing of Plaintiff's EEOC charge should constitute the commencement of "legal action" and that because Plaintiff filed his EEOC charge within six months of the date of his termination, he satisfied the limitations period. This interpretation does not comport with the plain meaning of "legal action." The filing of an EEOC charge is not the same as bringing "legal action." See Black's Law Dictionary (10th ed. 2014) (defining "action" as a "civil or criminal judicial proceeding" and providing further commentary that "action" is a "proceeding in a court of justice" and a "proceeding [ ] in [a] court [ ] of law."); EEOC v. Shell Oil Co., 466 U.S. 54, 104 S.Ct. 1621, 1631, 80 L.Ed.2d 41 (1984) ("[A] charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit."); Ray v. FedEx Corporate Servs., Inc., 668 F.Supp.2d at 1070 (holding that for the same language at issue in this case that "[i]t does not appear that the filing of a charge with the EEOC constitutes 'legal action' as that terms appears in the 'Employment Agreement' in this case."); Tyler v. FedEx Freight, 2015 WL 1880007, 2015 U.S.Dist. LEXIS 53662 (S.D. Ohio Apr. 23, 2015) ("The charge is not a 'complaint' and does not commence a civil action, but 'merely informs the EEOC of possible discrimination.' ").
The only authority Plaintiff cites for this proposition, Occidental Life Ins. Co. of California v. E.E.O.C., 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), is inapposite. There, the Supreme Court declined to enforce a state's one-year statute of limitations as applied to Title VII employment discrimination actions where the limitations period commenced before accrual. That holding was premised on the procedural scheme of Title VII claims, which as detailed above, differs materially from the procedural requirements for an ADEA claim, as well as evidence that the EEOC faced a backlog. See id. at 2456-57 ("It would hardly be reasonable to suppose that Congress intended to enforce state statutes of limitations as short as 12 months where the Equal Employment Opportunity Commission faced a backlog of 18 to 24 months, leaving claimants with little chance of bringing a claim not barred by the state's statute of limitations."). See also Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 134 S.Ct. 604, 612-613, 187 L.Ed.2d 529 (2013) (holding that a participant in an employee benefit plan covered by ERISA may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable and distinguishing Occidental based on the evidence in Occidental that there were obstacles to bringing a timely claim within the limitations period).

See Document No. 8.

Document No. 1.

Document No. 22, Ex. 2. Plaintiff provides no evidence of exactly when these comments were made. The best Plaintiff offers is his assertion in the EEOC charge that he was fired "several" months after Gleissner's comments. See Document No. 22, Ex. 2. "Several" means "more than one and fewer than many," Webster's Third New International Dictionary (2002), or as Black defines it, "more than one or two but not a lot." Black's Law Dictionary (10th ed. 2014). "[A] time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes," Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001), but comments made six months before the adverse employment action have been held to be only "stray remarks." Odubela v. Exxon Mobil Corp., 736 F. Appx. 437, 443 (5th Cir. 2018). By his use of the inexact word "several," Plaintiff does not meet his burden to show that Gleissner's age comments were made within a time period sufficiently close to Plaintiff's termination to be considered proximate.

Document No. 22 at 20.

Document No. 21, Ex. 4 at 5 of 6.

Id.

See Document No. 22, Exs. 9, 10.

See id., Exs. 13, 14.

See ids="11108115" index="106" url="https://cite.case.law/f3d/246/344/#p354">id., Ex. 11.

Id.

See ids="11108115" index="108" url="https://cite.case.law/f3d/246/344/#p354">id., Ex. 1 at 244:15-22.

See ids="11108115" index="109" url="https://cite.case.law/f3d/246/344/#p354">id., Ex. 12.