## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20241

United States Court of Appeals
Fifth Circuit

**FILED**
July 16, 2015

Lyle W. Cayce
Clerk

MAURICE R. GOUDEAU,

Plaintiff – Appellant,

v.

NATIONAL OILWELL VARCO, L.P.,

Defendant – Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before BENAVIDES, SOUTHWICK, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Maurice Goudeau appeals the district court's summary judgment dismissal of his age discrimination and retaliation claims. For the reasons that follow, we affirm the dismissal of the retaliation claim but reverse the dismissal of the discrimination claim.

**I.**

The following background construes factual disputes in favor of Goudeau as courts must when the opposing party has moved for summary judgment.

Goudeau began his career in 1993 as a mechanic and millwright at ReedHycalog. He was promoted through the ranks and obtained the position of maintenance supervisor, a post he held when ReedHycalog was acquired by National Oilwell Varco (NOV) in 2008. Goudeau continued to be employed as

No. 14-20241

a maintenance supervisor at NOV's Conroe, Texas facility until he was terminated in 2011 at the age of fifty-seven.

At NOV, Goudeau first worked under a supervisor named Tim Taylor. During that time, Goudeau had no disciplinary problems. In August or September 2010, Mike Perkins became Goudeau's supervisor. On one occasion, when they stepped outside to smoke, Perkins told Goudeau that "there sure are a lot of old farts around here," and asked Goudeau about his job duties. In the same exchange, Perkins inquired about the ages of two older employees whom he also supervised, Joe Jett and Bill Fisher, and how long they had been working for NOV. Perkins then said that he planned to fire both Jett and Fisher.

Goudeau complained to Human Resources (HR) about Perkins's "old farts" comment and about the plan to fire the older workers. Although the HR representative told Goudeau a meeting would be arranged with Perkins, it is unclear if HR ever actually discussed the allegations with Perkins. In any case, following the HR complaint, Perkins stopped socializing with Goudeau, reduced Goudeau's managerial authority, and "really turned the heat up on [him]." Perkins also continued to make ageist remarks. On a number of occasions, Perkins asked if the facility's smoking area was "where the old people meet." Perkins also once remarked that Goudeau wore "old man clothes." Goudeau contends that Perkins also referred to Goudeau as an "old fart." Goudeau does not recall the exact dates when Perkins made the various ageist comments described above, other than that they were all made sometime between August/September 2010, when Perkins became Goudeau's supervisor, and January 2011, when Goudeau received his first disciplinary write-up.

Perkins issued Goudeau that "First Warning" for ignoring a direct request to complete a task. It was the first disciplinary action of Goudeau's

No. 14-20241

eighteen-year career with NOV and its predecessor. Goudeau signed the write-up, but filed written objections to the substance of the allegations and complained to HR that the write-up was a retaliatory measure for opposing Perkins's plan to fire Jett and Fisher. In March 2011, Goudeau received his first annual performance review from Perkins and was given a below-standard rating. Goudeau again complained to HR that the poor review was retaliation, and filed a written statement disputing the deficiencies listed in the review.

The remaining documents in Goudeau's personnel file consist of four write-ups—three are dated July 2011 and one is dated August 2011. Goudeau maintains that he not was presented with these four write-ups until the meeting on August 11 when he was terminated. The three July write-ups include: a "Second Warning," for failing to get machines repaired and costing the plant unnecessarily; a "Third Warning," for failing to perform a monthly inspection of fire extinguishers; and a "Final Warning" for failing to commence an assigned project. Each of these write-ups was signed by Perkins and HR on July 15, 2011, even though the violations described in each write-up occurred on different dates. The "Second Warning" involved a violation that occurred on June 26, 2011. The "Third Warning" described a violation that occurred on July 12, 2011. The "Final Warning" detailed a violation that occurred on July 14, 2011. None contains Goudeau's signature, even though there is an "acknowledgement of receipt of warning" section with a line for "employee signature." Moreover, Goudeau contends that the infractions described in the write-ups did not involve tasks within his job duties. The personnel file also contains a fifth write-up— a second "Final Warning," dated August 10, 2011, for failing to complete a task requested by Perkins on August 9, 2011. This write-up contains no signatures.

3

No. 14-20241

At the August 11 meeting at which Goudeau contends he first saw these written warnings,[1] Perkins terminated Goudeau's employment citing poor job performance and insubordination. Goudeau was not replaced; his duties were instead absorbed by existing employees. At some point after the "old farts" discussion, Perkins also terminated Fisher due to performance problems. Jett, meanwhile, was terminated by HR after failing a random alcohol test.

Goudeau brought suit asserting claims of age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code Ann. §§ 21.051, 21.055. ROA. 22–28. The district court granted summary judgment in favor of NOV on both claims. Goudeau timely appealed.

## II.

We review a grant of summary judgment *de novo*. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012). In doing so, we "draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000)).

---

[1] Goudeau's testimony is inconsistent concerning whether Perkins had orally communicated the performance problems discussed in these warnings prior to the day of his termination. Goudeau concedes that Perkins talked to him about the incidents alleged in the second write-up, and fourth write-up (*i.e.*, the first "Final Warning"). But in another part of the record, Goudeau appears to concede that Perkins discussed the incidents contained in *all* of the write-ups with him in "passing" before his termination. Inconsistent with this position is Goudeau's claim elsewhere in the record that, "Because [he] was unaware of these issues prior to [his] termination, [he] was not given the opportunity to improve or correct the alleged performance problems."

4

No. 14-20241

## A.

The ADEA and the TCHRA both prohibit an employer from discharging an employee on account of that employee's age.[2]  *See* 29 U.S.C. § 623(a)(1); Tex. Lab. Code Ann. § 21.051.  Because "there will seldom be eyewitness testimony as to the employer's mental processes," *Reeves*, 530 U.S. at 141 (citation and quotation marks omitted), claims brought under these laws typically rely on circumstantial evidence that is evaluated under the burden-shifting framework first articulated in *McDonnell Douglas* for Title VII claims of employment discrimination.  *See Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1504–05 (5th Cir. 1988) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  "Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (citation and quotation marks omitted).  If the plaintiff successfully makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination.  *Id.*

Only at the third and final "pretext" stage of this analysis do the federal and state laws provide different standards.  *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) ("The third step of the *McDonnell Douglas* analysis involves a different causation inquiry under the ADEA and the

---

[2] The analytical framework for Goudeau's ADEA claim applies equally to his TCHRA claim, except when otherwise noted.  *See NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999) ("The [TCHRA] purports to correlate state law with federal law in the area of discrimination in employment . . . Thus, in light of the Legislature's express purpose, we look to analogous federal precedent for guidance when interpreting the Texas Act." (citations and quotation marks omitted)).

TCHRA." (citing *Reed*, 701 F.3d at 440)).    "Under the ADEA, the employee must 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"    *Squyres*, 782 F.3d at 231 (quoting *Reeves*, 530 U.S. at 143).    The ADEA thus requires a showing of "but-for" causation.    *See Squyres*, 782 F.3d at 231 (citations omitted).    The TCHRA requires a less demanding showing as a plaintiff can prove discrimination at the third stage by establishing that "either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor."    *Reed*, 701 F.3d at 439–40 (quoting *Michael v. City of Dallas*, 314 S.W.3d 687, 691 (Tex. App.—Dallas 2010, no pet.)); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001).

Although the district court found that Goudeau established a prima facie case of age discrimination, we begin with that issue because NOV challenges that finding and we may uphold a grant of summary judgment on an alternative ground raised below and supported by the record.    *See Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).    The first three elements of Goudeau's prima facie case are undisputed: Goudeau was qualified for the position and older than 40 when he was discharged.    *See* 29 U.S.C. § 631(a).    Goudeau contends that the ageist comments satisfy the fourth prima facie element—that he was "otherwise discharged because of his age."    NOV counters that the remarks Goudeau attributes to Perkins are insufficient under the four-part "stray remarks" test articulated in *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996).    This issue requires us to again emphasize the two different contexts in which we evaluate so-called "stray remarks" evincing discrimination.    *See Reed*, 701 F.3d at 441 n.5 (recognizing

that "this court's application of this distinction has been somewhat messy, complicating matters for district courts").

The *CSC Logic* test that NOV invokes requires that any ageist remark be proximate in time to the terminations, made by an individual with authority over the employment decision, and related to the challenged decision. 82 F.3d at 655. That more demanding test applies, however, only when the remarks are being used as direct evidence of discrimination. *Reed*, 701 F.3d at 441 (explaining that *CSC Logic* test applies only to comments offered as direct evidence of discrimination). Such a case is analyzed outside the more common *McDonnell-Douglas* framework, as the comments are being relied on to prove the entire case of discrimination. We thus allow such comments to defeat summary judgment—that is to serve as sufficient evidence that by itself would allow a jury to find discriminatory motive—only if they are not stray, but instead are tied to the adverse employment action at issue both in terms of when and by whom they were made. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (stating, in analyzing "old, gray-haired fart" remark offered as direct evidence of age discrimination, that "[c]omments that do not meet [*CSC Logic*'s] criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment") (citations omitted).

In a circumstantial case like this one, in which the discriminatory remarks are just one ingredient in the overall evidentiary mix, we consider the remarks under a "more flexible" standard. *See Reed*, 701 F.3d at 441 (citing *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 226 (5th Cir.2000)). To be relevant evidence considered as part of a broader circumstantial case, "the comments must show: '(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.'" *Squyres*, 782 F.3d at 236 (quoting *Reed,* 701 F.3d at 441). The district court properly

found that comments allegedly made by Goudeau's supervisor about, among other things, "old farts" and Goudeau wearing "old man clothes" easily meet this less stringent standard.[3] *See, e.g.*, *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004) (finding ADEA plaintiff "easily establishe[d] a *prima facie* case" when terminating supervisor had made ageist comments about plaintiff and plaintiff had complained to human resources about the comments**)**; *see also Machinchick*, 398 F.3d at 353 (finding that "age stereotyping remarks" made by terminating supervisor to plaintiff supported inference of age discrimination at prima facie stage).  And the comments are not the only evidence Goudeau can point to in support of showing that he was discharged because of age. Perkins also terminated one of the two "old fart" coworkers whom he allegedly told Goudeau he was going to fire after asking about their age; the second "old fart" was terminated by HR for failing an alcohol test.

We therefore conclude that Goudeau has satisfied his initial burden. NOV has also satisfied its burden of production in identifying two nondiscriminatory reasons for the termination—poor performance and insubordination.  The age discriminations claims thus come down to the pretext question which is the stage at which the district court found Goudeau's evidence insufficient.

At this step of the *McDonnell Douglas* analysis, an ADEA plaintiff must prove "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Squyres*, 782 F.3d at 231

---

[3] Although the Texas Supreme Court has not spoken on the issue, we have recently concluded that "because Texas courts consistently look to federal case law in interpreting the TCHRA," the state courts would likely follow the two-part *Russell* test for considering discriminatory remarks in circumstantial cases. *Reed*, 701 F.3d at 442 n.6; *see also Squyres*, 782 F.3d at 238 n.8 (noting same and applying *Russell* to ageist comments offered as circumstantial evidence in TCHRA claim).

(quoting *Reeves*, 530 U.S. at 143). "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves*, 530 U.S. at 143 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). As the district court noted, "[t]he issue at the pretext stage is whether [the employer's] reason, even if incorrect, was the real reason for [the plaintiff's] termination." *Sandstad*, 309 F.3d at 899. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 147–48.

Goudeau seeks to undermine the genuineness of NOV's explanations on two fronts. First, he contends that the warnings he was given involved infractions related to tasks not within his job duties. For example, with respect to the second warning for failing to get machines repaired, and the third warning for failing to perform a monthly fire extinguisher inspection, Goudeau claims these were not tasks within his job duties but were the responsibilities of other managers. Second, he argues that the fact he was not given the four written warnings until the day he was fired, even though they related to events occurring on different dates before that meeting, shows that these infractions were just an attempt to conceal the discriminatory motivation.

We are convinced that the doubts that Goudeau has raised about the warnings, combined with the ageist comments that are potentially corroborated by the firing of both Goudeau and Fisher, would allow a jury to conclude that age was the reason for the termination. *See Russell*, 235 F.3d at 224 (holding that evidence that plaintiff "was not given a formal oral warning, a written warning, or a 'corrective action plan,' all of which are required by [the employer's] own internal procedures" prior to being terminated, among other

evidence, was sufficient to create jury issue on pretext); *Laxton v. Gap Inc.*, 333 F.3d 572, 581 (5th Cir. 2003) (holding, in a Title VII pregnancy discrimination case, that evidence was sufficient to create jury issue on pretext when, among other things, plaintiff's "supervisors never gave [the plaintiff] the chance to explain her conduct or improve it" prior to terminating her and noting that "[h]ad [the employer] bothered to do so, progress might have been made"). The district court did not consider as pretext evidence the ageist comments it found sufficient to establish a prima facie case. The Supreme Court has instructed, however, that the strength of the prima facie evidence may also be considered at the pretext stage, *see Reeves*, 530 U.S. at 148, and we have more directly held that comments showing discriminatory animus are part of the analysis at this stage. *See, e.g.*, *Russell*, 235 F.3d at 225 n.9 (noting that remarks by a supervisor showing discriminatory animus may "be utilized by a plaintiff to demonstrate pretext"). This makes sense as the pretext inquiry is asking the ultimate question whether a jury could find that discrimination caused the termination. *See Reeves*, 530 U.S. at 142–43.

NOV responds to the questions surrounding the written warnings by correctly pointing out that the law does not require warnings; it could have fired an at-will employee like Goudeau for his first infraction or without any cause, so long as there was no discriminatory motive. We have recognized, however, that when an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to inferences of pretext. *See Machinchick*, 398 F.3d at 354 n.29 (noting that even the non-mandatory nature of a progressive discipline plan did "not eliminate the inference of pretext raised by [the] failure to follow an internal company policy specifically stating that it should be 'followed in most circumstances'"); *cf.Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454–55 (5th Cir. 2013) (noting that relevant evidence for establishing prima facie

retaliation case "may include . . . an employer's departure from typical policies and procedures"). And Goudeau's evidence bears more directly on pretext than a failure to follow steps in a progressive discipline policy; he contends that the employer manufactured steps in the disciplinary policy by issuing written warnings to paper his file after it had decided to fire him. If Goudeau's testimony that he never saw the warnings until he was terminated is believed, and we must believe it at this stage,[4] the very purpose of the warnings—presumably to warn so that an employee may take corrective steps to avoid losing his job—is undermined and thus may give rise to an inference of pretext.

At the end of the day, the pretext inquiry asks whether there is sufficient evidence "demonstrating the falsity of the employer's explanation, taken together with the prima facie case," to allow the jury to find that discrimination was the but-for cause of the termination. *See Sandstad*, 309 F.3d at 897. Perhaps the best way to answer that question is by considering a succinct summation that Goudeau's lawyer could make at trial based on the evidence presented at the summary judgment stage:

> Mr. Goudeau's new boss repeatedly made negative comments about old people. He said Goudeau wore "old man clothes," called him an "old fart," and said a smoking area was "where the old people meet." The supervisor also made a comment that "there sure are a lot of old farts around here" during a conversation in which he asked Goudeau about the ages of two other employees. After hearing their ages, he said he was going to fire them. The boss followed through on that statement and ultimately fired two of the three "old farts," including Mr. Goudeau. He couldn't fire the third only because he left the company for another reason.
>
> NOV says that it fired Goudeau because of his poor performance. Those complaints about Goudeau only started with this new boss after 18 years of a solid work record with the

---

[4] There is also corroborating evidence given that his signature does not appear in the employee acknowledgement section of any of the forms.

No. 14-20241

company.  The final four warnings involved duties that were not Goudeau's responsibility.  And those written warnings sure are suspicious because Goudeau never received them prior to being fired—what's the point of that kind of warning—and three of them were signed by his supervisor on the same date even though the infractions supposedly happened on different days.

NOV would no doubt offer a compelling closing argument in response.  It vigorously disputes Goudeau's testimony concerning both the ageist comments and the warnings.  And a jury may well disbelieve Goudeau's testimony on all these points or find that there are innocent explanations for the problems with the warnings that he identifies.  But given the summary judgment stage at which we must credit Goudeau's testimony and find inferences in his favor, we conclude that the evidence he has identified is sufficient to allow a finding that age discrimination was the cause of his termination in violation of the ADEA.  That necessarily means the evidence meets the lesser "motivating factor" standard under Texas law.

**B.**

We reach a different result with respect to the retaliation claim.  The ADEA's antiretaliation provision prohibits an employer from discriminating against an employee for opposing an unlawful practice or asserting a charge, testifying, assisting, or participating in an ADEA proceeding or investigation.  29 U.S.C. § 623(d).  The TCHRA similarly prohibits retaliation for such conduct.  Tex. Lab. Code Ann. § 21.055.  "The analytical framework for a retaliation claim is the same as that used in the employment discrimination context."  *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).  To establish a prima facie retaliation case, a plaintiff must show that "1) he engaged in protected activity; (2) he suffered an adverse employment decision; and (3) a causal link exists between the protected activity and the adverse employment decision."  *Id.*

No. 14-20241

Goudeau alleges that Perkins fired him in retaliation for Goudeau reporting the "old fart" comments to HR.[5] We agree with the district court that Goudeau is unable to establish the causal link in light of the temporal gap of 8–10 months between Goudeau's complaint to HR and the adverse employment action (Goudeau's termination) and the absence of evidence that Perkins even knew of the complaint to HR about the "old farts" comment.

We therefore AFFIRM in part and REVERSE in part the judgment of the district court and REMAND for further proceedings.

---

[5] Goudeau does not recall the exact date when he lodged his complaint with HR regarding Perkins's "old farts" comment, only that it was sometime before he received his first write-up in January 2011.

13