# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60145

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2019

Lyle W. Cayce
Clerk

MARGARET SUE INMON,

      Plaintiff - Appellant

v.

MUELLER COPPER TUBE COMPANY, INCORPORATED,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:16-CV-209

Before JOLLY, DENNIS, and HIGGINSON, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:*

    Margaret Sue Inmon was fired from her job as a factory worker when she was sixty-nine years old. She sued her former employer, Mueller Copper Tube Company, Incorporated, under the Age Discrimination in Employment Act of 1967 (ADEA). 29 U.S.C. § 621 *et seq.* The district court granted Mueller summary judgment, finding that Inmon had failed to present evidence that the

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60145

proffered legitimate nondiscriminatory reason for her discharge was false. We affirm.

I.

Plaintiff-Appellant Margaret Sue Inmon began working for Defendant-Appellee Mueller Copper Tube Company, Incorporated at its facility in Fulton, Mississippi in 1997 when she was fifty-one years old. The plant is unionized, and a collective bargaining agreement provides a grievance process for employees to dispute disciplinary measures. Mueller also has plant rules and a policy that an employee who is disciplined four times in a one-year period is discharged. Mueller fired Inmon after she accumulated four disciplinary actions in 2015.

In August 2015, Inmon received the first disciplinary action relevant to this appeal. Mueller had "drafted" Inmon, pursuant to the collective bargaining agreement, to stay past her scheduled shift. After approximately twenty minutes, Inmon notified the foreman that she was sick and needed to leave. She left before a replacement was found, stopping production on her line. She was issued a verbal warning for leaving before being replaced.[1] Inmon concedes that she was required to work overtime when drafted but claims that the machine required two people to operate and, because the second employee was not present, it was not operating when she left.

On November 23, 2015, Inmon received a written warning from plant superintendent Jon McWilliams for sitting and reading a newspaper while

---

[1] Specifically, Inmon was disciplined for violating Rule 16 (prohibiting employees from restricting production and walking out of work), Rule 36 (requiring employees to be available and work overtime as assigned), and a rule that employees shall not leave their machines without conducting a "handshake" with their replacement.

No. 18-60145

other employees were cleaning.[2]  Inmon disputes this violation and claims that McWilliams, who was not her direct supervisor, would often harass her.  She gives two accounts of her conduct.  First, she asserts that she was picking up a newspaper as part of cleaning her area, not reading one.  Second, she claims that she was sitting in a chair and that she could do so, and even read a newspaper, because she was caught up on her work.

Inmon's reaction to the written warning would lead to her third disciplinary action.  After McWilliams issued her the written violation, Inmon became loud and began accusing him of harassing her.  When she left the meeting, she slapped a table and said, "I'm going to take care of this one myself."  Inmon first complained to plant manager Michael Baum.  She then went to the local police and filed a criminal affidavit charging McWilliams with "disturb[ing] the peace of Margaret Inmon . . . by yelling at her and telling her to shut her mouth," in violation of Miss. Code Ann. § 97-35-15.  McWilliams was charged a few weeks later based on Inmon's affidavit and released on his own recognizance.  Inmon later dropped the charges.

The day after the arrest, December 9, 2015, Travis Fisher, Mueller's personnel manager, issued Inmon a writeup for "making false vicious statements, distracting attention of others, insubordinate conduct."[3]  Because of her previous warnings, Fisher suspended Inmon for three days.  Mueller claims that the suspension was due to Inmon disturbing co-workers on the floor by telling them that she was going to "get even" with McWilliams by getting

---

[2] Plant Rule 8, which McWilliams cited Inmon for violating, provides that "[a]n employee shall not waste time, loaf or loiter on the job."

[3] Inmon was specifically accused of violating Rule 12, which states that "an employee shall not utter or publish false, vicious or malicious statements concerning the Company, its products, or any employee," Rule 16 prohibiting restricting production, and Rule 25, which provides that "employee[s] shall not commit any insubordinate conduct or action, refuse or fail to follow a supervisor's instructions or refuse or fail to perform the work assigned."

him fired, failing to follow supervisor instructions, and sitting down when she should not have been. Fisher testified that the false and vicious statements for which he wrote her up were those made in the criminal affidavit against McWilliams. Inmon testified that when she asked Fisher if she was suspended because of the criminal charges, he responded, "You got that right."

On December 28, 2015, Mueller fired Inmon following her fourth alleged incident of misconduct. Inmon was working on a plugger machine with Helen Northington, a new hire. The parties disagree over what happened next. Mueller claims that Inmon became frustrated with Northington, who was having a difficult time handling the copper tubing, and began slinging the tubing, causing it to strike Northington. A coworker, Carol Gable, also witnessed what she believed was Inmon throwing copper tubing at Northington. Inmon walked off the machine thirty minutes before her shift ended and Northington reported to Fisher that Inmon had left. The next day, Gable told Fisher she had seen Inmon throwing copper tubing and provided a written statement. According to Mueller, video confirmed that Inmon slung copper tubing, which struck Northington; threw a thermos of coffee on the plant floor in an angry manner; and left her work station early. The disciplinary report also stated that Inmon had been using her cell phone, in violation of Plant Rule 7. Inmon claims that the shutdown was caused by Northington's hand becoming stuck in the machine. She also claims it was the inexperienced Northington who was sliding tubing towards her face. She denied throwing tubing or littering.

Baum testified that he decided to fire Inmon because it was her fourth disciplinary action within one year. Inmon was sixty-nine years old. Her replacement was twenty-four years old. Inmon filed a grievance with the union, but the union did not prosecute the claim based on its belief that it could not prevail in arbitration.

No. 18-60145

II.

Inmon filed suit in federal district court asserting a claim for age discrimination.[4] The district judge granted summary judgment to Mueller, finding that Inmon had failed to present evidence indicating that Mueller's proffered legitimate nondiscriminatory reason for her termination was pretextual. This timely appeal followed.

III.

On appeal, Inmon argues that the district court erred in granting summary judgment because she had created a genuine issue of material fact as to whether Mueller's proffered legitimate nondiscriminatory reason for firing her was false. She points to her own testimony alleging that Mueller's management lied about her job performance, her replacement by a significantly younger worker, and testimony from coworkers that she did not have performance issues. Mueller contends that the district court should be affirmed because no reasonable jury could find that Inmon's age was the "but for" cause of her firing.

Finding Inmon's evidence insufficient to rebut Mueller's proffered legitimate nondiscriminatory reason for firing her, we affirm the district court's grant of summary judgment.

IV.

We review a district court's grant of summary judgment *de novo*. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[4] Inmon also asserted a claim for wrongful termination under Mississippi law. The district court granted summary judgment to Mueller on that claim and Inmon has abandoned it on appeal.

Fed. R. Civ. P. 56(a).  There is no genuine issue for trial when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  All facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences drawn in its favor.  *WC&M*, 496 F.3d at 398.

We now turn to the applicable legal principles that govern this appeal.

## V.

## A.

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To hold an employer liable, "the plaintiff's age must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (alteration in original) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).  When a plaintiff relies on circumstantial evidence to prove discrimination, we apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1504–1505 (5th Cir. 1988)).  While the burden shifts between the parties under this framework, the ultimate burden of persuasion is on the plaintiff to prove "that age was the 'but-for' cause of the challenged employer decision."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178–79 (2009).

"Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the

time of discharge; and (4) [s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age." *Goudeau*, 793 F.3d at 474 (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).  Once the plaintiff establishes a prima facie case of age discrimination, the burden of production shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the termination." *Id.* (citing *Machinchick*, 398 F.3d at 350).  If the defendant meets its burden, rebutting the prima facie case, the plaintiff must meet her ultimate burden of persuasion that the defendant engaged in intentional discrimination.  *Machinchick*, 398 F.3d at 350.  This burden can be met through evidence that the defendant's stated reason is pretextual.  *Id.*

In *Rachid v. Jack In The Box, Inc.*, we held that a mixed motive analysis, which we termed the "modified *McDonnell Douglas* approach," is also applicable in ADEA cases.  376 F.3d 305, 312 (5th Cir. 2004).  Under the modified approach, the plaintiff can rebut the defendant's proffered nondiscriminatory reason by showing it is pretextual, as described above, or by "creat[ing] a genuine issue of material fact . . . that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Id.* (internal quotation marks and citation omitted).  If the plaintiff can show that age was a motivating factor, "it then falls to the defendant to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus.'" *Id.* (internal citations omitted).

The Supreme Court has explained that a "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.  In other words, even if the plaintiff cannot produce any evidence that the defendant had a discriminatory

motive, a prima facie case and evidence that the defendant's proffered nondiscriminatory explanation is false can support an inference of discrimination. *Machinchick*, 398 F.3d at 350. Whether summary judgment is appropriate depends on several factors that differ from case to case.[5] *Reeves*, 530 U.S. at 149. They include "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* at 148–49.

## B.

We agree with the district court that Inmon has established a simple and clearly understood prima facie case of age discrimination. Inmon was (1) discharged, (2) qualified for the position, based on having worked at the plant for nineteen years, (3) over the age of forty-five, and (4) replaced a by twenty-four year old. Mueller, in turn, has met its rebuttal burden by asserting a legitimate nondiscriminatory reason for firing her: Inmon accrued four disciplinary actions in a one-year period. Thus, to survive the district court's grant of summary judgment, Inmon must now meet her ultimate burden of persuasion that Mueller engaged in intentional age discrimination. *See Machinchick*, 398 F.3d at 350.

Inmon argues that summary judgment was improper because of the strength of her prima facie case and her evidence that Mueller's stated reason for firing her was false. In *Turner v. North Am. Rubber, Inc.*, we held that proof that a plaintiff's replacement is less than forty is "insufficient for [the plaintiff's] *ultimate burden* of proving intentional age discrimination." 979 F.2d 55, 59 (5th Cir. 1992) (emphasis added) (alteration in original) (quoting

---

[5] *Reeves* concerned whether judgment as a matter of law was proper, but the inquiry for summary judgment is the same. *See* 530 U.S. at 150.

No. 18-60145

*Little v. Republic Refining*, 924 F.2d 93, 98 (5th Cir. 1991)).    But *Reeves* instructs us to consider the strength of the prima facie case in determining if summary judgment is proper.    *See* 530 U.S. at 148–49.    Replacement of a worker with someone who is substantially younger may indicate a strong prima facie case.    *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Williams v. Harris Cty. Hosp. Dist.*, 54 F. App'x 412, 412 n.1 (5th Cir. 2002) ("[A] plaintiff may construct a sufficient inference that he was discharged because of age by showing that he was replaced in his position by someone not insignificantly younger than himself."); *cf. Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 268 (5th Cir. 2015) ("An age gap of less than two years is insufficient to support a prima facie case of age discrimination."). Inmon's replacement by a twenty-four year old establishes a strong prima facie case that age could have been a motive for the personnel action.[6]

Inmon argues that there is a factual dispute over whether her conduct in the four instances amounted to action justifying the disciplinary measures that ultimately led to her discharge.    To avoid summary judgment here, however, Inmon must point to some evidence that Mueller acted in some manner of bad faith when assessing the facts that led to her discharge.    *See Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (requiring the plaintiff "to show not only that the determination was wrong, but also that it was reached in bad faith" to establish "that the given reason for his termination . . . is false or unworthy of credence").    Or stating the same rule differently: considering the whole of the parties' testimony, was the employer's conclusion unreasonable?    *Bauer v. Albermarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999)

---

[6] Mueller argues that, under its collective bargaining agreement, the union controlled the hiring of Inmon's replacement.    The portions of the record cited by Mueller, however, merely establish the existence of the collective bargaining agreement.    They say nothing about hiring practices.

(holding that an employer's belief "does not have to be proven to be correct . . . to be a legitimate, non-discriminatory reason . . . so long as the belief is reasonable, not arbitrary, and not a likely pretext for unlawful discrimination"). Baum, who fired Inmon, had a good faith belief that Inmon had engaged in four instances of misconduct. Each disciplinary action was contemporaneously recorded in writing by managers and the final incident was corroborated by two employees who reported her misconduct.[7]

The only evidence that Inmon can point to suggesting bad faith is her self-serving version of the facts, claiming that her conduct did not arise to the level of a rule violation. She also cites the testimony from her direct supervisor and a coworker that she did not have performance issues, which does not address the specifics of her conduct that triggered the disciplinary measures. Such self-serving statements and general observations are insufficient to create a triable issue of fact. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (holding that the plaintiff's "self-serving statements" that he did not engage in misconduct were insufficient to avoid summary judgment when there was "considerable evidence" the plaintiff violated company policy and no "evidence as to why the company's reliance on the evidence against [the plaintiff] was in bad faith"). In sum, we hold that a significant difference in age, standing alone, is insufficient evidence of pretext in this case and therefore the district court did not err in granting Mueller summary judgment.

---

[7] Inmon argues that the managers and "short-term" employees who testified about her misconduct are "interested witnesses" whose testimony must be disregarded at the summary judgment stage. *See Reeves*, 530 U.S. at 151. We have already rejected that argument as taking *Reeves* one step too far. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("The definition of an interested witness cannot be so broad as to require us to disregard testimony from a company's agents regarding the company's reasons for discharging an employee.").

No. 18-60145

C.

Inmon alternatively argues that she may overcome Mueller's proffered nondiscriminatory reason for her firing through a mixed-motive analysis. That is, assuming that Inmon engaged in the conduct asserted by Mueller, she may nevertheless prevail by showing "that a discriminatory motive more likely motivated the employer." *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992). She offers two reasons why her age was a motivating factor: the discrepancy in age between her and her replacement and the fact that her direct supervisor testified he had no problems with her job performance. To avoid summary judgment under the mixed-motive analysis, our cases have required evidence of ageist comments or disparate treatment. *See, e.g.*, *Machinchick*, 398 F.3d at 353–54 (denying summary judgment based on evidence of a company plan to hire younger workers, use of "age stereotyping remarks," disparate treatment, and inquiries about when plaintiff intended to retire). The closest Inmon comes to identifying ageist remarks or disparate treatment is by pointing to exhibits shown by a plant manager to a union representative in 2012 explaining that older employees increased health insurance costs and a buyout program, provided under the collective bargaining agreement, that was offered in part based on age. Neither of those incidents suggest that age was a motivating factor in Mueller's decision to fire Inmon. *See Jackson*, 602 F.3d at 380 (explaining that ageist comments must be proximate in time to the adverse employment decision, made by an individual with authority over the decision, and related to the employment

11

No. 18-60145

decision to constitute evidence of discrimination).    Summary judgment was therefore also proper under the modified *McDonnell Douglas* approach.[8]

## VI.

Because no genuine issue of material fact exists, the district court's grant of summary judgment is AFFIRMED.

---

[8] Inmon also argues that granting summary judgment when state of mind is at issue offends her Seventh Amendment right to a jury trial and is inconsistent with *Reeves*.  Our case law applying the *McDonnell Douglas* framework forecloses this argument.