# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 16, 2024

Lyle W. Cayce
Clerk

No. 23-20166

————————————

Dean Dabbasi,

*Plaintiff—Appellant*,

*versus*

Motiva Enterprises, L.L.C.,

*Defendant—Appellee*.

———————————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-4344

———————————————————————————

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

Plaintiff Dean Dabbasi was terminated in 2019 by his employer, Defendant Motiva Enterprises. As a result, Dabbasi brought an age-discrimination claim against Motiva under the Age Discrimination in Employment Act and the Texas Commission on Human Rights Act. He also brought a claim under the Americans with Disabilities Act and the Texas Commission on Human Rights Act. The district court granted summary judgment in favor of Motiva. We find a fact dispute that is relevant only to the claim of discrimination based on age. Accordingly, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

No. 23-20166

## FACTUAL AND PROCEDURAL BACKGROUND

Dabbasi began his employment with Motiva in June 2014, when he was 48 years old. He worked as a Gasoline Coordinator in the Economics and Scheduling ("E&S") Department at the Port Arthur, Texas Refinery and reported to Production Planning Manager Rod Dolan.

Dolan placed Dabbasi on a Performance Improvement Plan ("PIP") in 2015 because he allegedly was "aggressive" and "intimidating." The PIP, however, was discontinued. Dabbasi later won a "President's Award" on three occasions, including in 2015 and 2018. Despite this, Dabbasi received subpar performance ratings on his 2015, 2016, and 2017 annual reviews.

In October 2018, Jeremy Burnham became Production Planning Manager and was Dabbasi's direct supervisor. Burnham began inquiring about the performance of E&S employees. He soon received negative feedback about Dabbasi, such as individuals allegedly having "a more difficult time working" with him and reporting that he "does not always communicate important information."

One month later, Motiva initiated assessments of its personnel. The company decided to fill coordinator positions with "early-career, high-potential employees." Burnham later clarified during litigation that the term "early career" did not refer to age and provided numerous examples of individuals over the age of 40 who were considered "early-career" employees.

That same month, Burnham completed a "Role Transitions" summary for E&S employees. He identified two categories of E&S employees: "Pillars" and "Beanstalks." "Pillars" were long-term E&S employees while "Beanstalks" were short-term, high-performing E&S employees who would transition through the E&S team to other positions.

2

Burnham also stated in his summary that Dabbasi did not fit into either category but should instead be in an E&S "Strategy Role."

Around December 2018, Burnham and Patrick Moore, the E&S Department Manager, allegedly told Dabbasi they wanted to "[r]otate younger people in E&S." Dabbasi did not report this to Human Resources ("HR").

After less than two months as Dabbasi's direct supervisor, Burnham prepared Dabbasi's performance review and rated him a three out of five. Though he would have liked to rate him a two, Burnham decided to rate him a three because of a lack of role definitions and accountability in 2018. He also decided to take a more "hands-on approach with Dabbasi to help" him improve his work performance.

On February 1, 2019, Burnham changed Dabbasi's title to "Heavy Oil Coordinator" because Dabbasi was familiar with the role's duties and had the requisite technical knowledge. Burnham also held "one-on-one meetings with Dabbasi" to help him transition his Gasoline Coordinator duties to Candace Vaughn, who was 33 years old and newly assigned to Dabbasi's previous role. When he transitioned to Heavy Oil Coordinator, Dabbasi did not receive a salary or bonus reduction, and his benefits and schedule stayed the same. Dabbasi testified, however, that this position diluted his influence, contacts, and opportunities at Motiva. According to Dabbasi, Burnham promised him an E&S Advisor role.

On February 13, 2019, Burnham sent Moore his thoughts on personnel position transitions within the E&S Department. Burnham suggested placing Dabbasi in an E&S Advisor role, which was similar to his suggestion in his November 2018 Role Transitions summary.

Between March 25 and April 12, 2019, Burnham received negative feedback about Dabbasi on three separate occasions. Burnham emailed

Moore that Dabbasi's performance had been "below expectations." On April 16, 2019, Burnham met with Dabbasi and explained his expectations for him. Burnham then told Jacob Nishida, an HR representative, that he was not ready to place Dabbasi on a PIP but would closely monitor Dabbasi's performance and keep Nishida privy to the situation.

The E&S Advisor position that Burnham envisioned for Dabbasi in his Role Transitions summary did not "materialize" after Motiva decided to avoid adding personnel in the E&S Department. According to Motiva, it never posted a job listing or conducted interviews for the E&S Advisor role. Additionally, Motiva never received an application from Dabbasi for the position.

At Dabbasi's 2019 mid-year review, Burnham decided to put Dabbasi on another PIP because Burnham's one-on-one meetings were unsuccessful; he had received numerous complaints about Dabbasi; he considered Dabbasi's performance deficient; and HR suggested he proceed with a PIP.

On July 18, 2019, Burnham, Nishida, and Peter Garrard, another HR representative, met with Dabbasi. They informed him that the purpose of the meeting was to place him on a PIP. Upon hearing this information, Dabbasi was shocked because Burnham had purportedly told him everything was "hunky-dory." Dabbasi stepped out of the room because he felt he was going to faint. He then allegedly returned to the room and insisted they reconvene another time. He left the room, took his blood pressure, then drove to his doctor's office. Dabbasi described this incident as "cardiac trauma." Motiva then provided Dabbasi with leave under the Family and Medical Leave Act. Dabbasi returned to work on August 12, 2019.

On August 14, 2019, Burnham, Nishida, and Garrard met with Dabbasi a second time about his PIP. According to Motiva, Dabbasi "became very loud, used a demeaning tone of voice, [and] was very animated in his

facial expressions and hand movements" during the meeting. Nevertheless, Dabbasi eventually signed the PIP. Burnham later told his supervisor, Moore, what happened during the meeting. Moore confirmed the information with Nishida and Garrard and decided to terminate Dabbasi's employment.

Moore and Nishida met with Dabbasi on August 15, 2019. Moore informed Dabbasi "that his employment was terminated because of his record of unsatisfactory performance, poor attitude (including during the PIP meeting), and refusal to commit to improving his performance." Dabbasi filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and alleged he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA") and the Texas Commission on Human Rights Act ("TCHRA"). He also asserted he was terminated because of his disability in violation of the Americans with Disabilities Act ("ADA") and the TCHRA. The EEOC gave Dabbasi a right-to-sue letter on December 1, 2020.

Dabbasi filed suit against Motiva on December 23, 2020, asserting the claims that were set out in his Charge of Discrimination. Motiva responded that Dabbasi's age and disability were not motivating factors in any of their employment decisions. On February 11, 2022, Motiva filed a motion for summary judgment. Motiva argued that (1) Dabbasi's TCHRA and ADEA claims were time-barred, (2) any other age-discrimination claims should be dismissed, and (3) Dabbasi's disability claim should be dismissed.

The district court ordered Motiva to provide additional information and denied its first motion for summary judgment.[1] After Motiva complied

---

[1] The court requested Motiva provide information about any employees above the age of 45 who were terminated between 2018 and 2019 from the E&S Department and the

with this request, it filed a second motion for summary judgment, which the district court granted. Dabbasi timely appealed.

## DISCUSSION

"We review the grant of a motion for summary judgment *de novo*, applying the same standard as the district court." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) (italics added). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Jackson*, 602 F.3d at 377. On summary judgment, "we draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (quotation marks and citation omitted).

Dabbasi argues the district court erred in holding he failed to establish a *prima facie* age-discrimination claim under the ADEA and the TCHRA. He specifically contends that the district court wrongfully "[p]iecemeal[ed]" his termination claim and should have instead evaluated the totality of the evidence. Dabbasi also argues the district court wrongfully held he failed to prove a *prima facie* disability-discrimination claim under the ADA and the TCHRA. We will consider each of these arguments.

### I.     *Age-discrimination claim*

"The ADEA and the TCHRA both prohibit an employer from discharging an employee on account of that employee's age." *Id.*; *see*

---

reason they were terminated. Motiva responded that Dabbasi was the only "individual responsive to the Court's Order."

29 U.S.C. § 623(a)(1); Tex. Lab. Code Ann. § 21.051. The same standards apply to both the ADEA and the TCHRA except at the pretext stage. *Goudeau*, 793 F.3d at 474 & n.2.

A plaintiff's age-discrimination claim may be based on circumstantial or direct evidence, or a combination of both. *Jackson*, 602 F.3d at 377. If a plaintiff relies on circumstantial evidence of age discrimination, this court applies the *McDonnell Douglas* framework to the inquiry. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896–97 (5th Cir. 2002) (discussing the *McDonnell Douglas* framework in the age-discrimination context). Here, Dabbasi admits he primarily relies on circumstantial evidence.

An analysis under *McDonnell Douglas* involves three possible steps. First, a plaintiff must establish a *prima facie* case by demonstrating the following: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson*, 602 F.3d at 378 (citation omitted). Second, if a *prima facie* case is shown, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). Third, if the employer satisfies that obligation, the burden shifts back to the plaintiff to show the employer's reason was pretextual. *Jackson*, 602 F.3d at 378 n.12.

We begin with whether Dabbasi made a *prima facie* case of age discrimination. In its summary judgment order, the district court discussed the age-discrimination claim as a series of four separate claims: (1) Dabbasi's transition to the Heavy Oil Coordinator position, (2) Dabbasi's not being placed in the E&S Advisor role, (3) Dabbasi's being placed on the PIP, and (4) Dabbasi's termination. Regarding Dabbasi's transition to Heavy Oil

Coordinator, the district court concluded this claim was time-barred under the ADEA and the TCHRA. The court turned to the E&S Advisor claim and determined it was time-barred under the TCHRA. Further, because the E&S Advisor position never materialized, the court also concluded Dabbasi could not assert a *prima facie* claim under the ADEA based on a position that was never available. Regarding the PIP, the court determined a PIP is not an adverse employment action; thus, that claim also failed. The court finally addressed Dabbasi's termination under the ADEA and the TCHRA. Candace Vaughn took Dabbasi's place as Gasoline Coordinator. The court stated that Dabbasi's claim was based on his termination from Heavy Oil Coordinator, not his being replaced in his former position. Thus, he was not replaced by someone younger in the necessary position under age-discrimination standards.

On appeal, Dabbasi insists this is a wrongful-termination case and argues the district court erroneously piecemealed his *prima facie* age-discrimination claim as separate claims of allegedly discriminatory events. According to Dabbasi, the district court engaged in a "hyper-mechanical application of the *McDonnell Douglas* framework" when it divided his age-discrimination claim into separate claims. These separate claims, Dabbasi argues, instead constitute the circumstantial evidence needed to prove his *prima facie* age-discrimination claim.

As an initial matter, Motiva contends Dabbasi did not raise this argument before the district court. That is incorrect. Dabbasi properly raised this objection.[2]

_____

[2] In his response to Motiva's second motion for summary judgment, Dabbasi stated, "Motiva would subdivide the case into discrete pieces: the removal from the Gasoline Coordinator role, the reneging on the promised promotion, the PIP, and the termination. This makes no sense." Dabbasi also asserted that "Motiva wishes to

It is necessary for the facts allegedly supporting a claim to be evaluated in their entirety. Indeed, a *McDonnell Douglas* analysis "was never intended to be rigid, mechanized, or ritualistic." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). We agree with Dabbasi that the district court should not evaluate whether each individual event in isolation demonstrated age discrimination when the argument is that the events collectively prove discrimination affected his employment. We also agree with Dabbasi that the summary judgment evidence creates a genuine dispute of material fact that he was "otherwise discharged because of his age." *Jackson*, 602 F.3d at 378 (quoting *Berquist*, 500 F.3d at 349). Burnham and Moore told Dabbasi they wanted to "[r]otate younger people" in the E&S Department. Motiva also decided to fill coordinator positions with "early-career" employees. Motiva later changed Dabbasi's position to Heavy Oil Coordinator, which weakened his influence and opportunities at Motiva, and replaced Dabbasi with a younger individual in his previous Gasoline Coordinator role. When viewing this circumstantial evidence in totality, we conclude Dabbasi has satisfied his initial burden of demonstrating a *prima face* age-discrimination case.

"[T]he burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination." *Goudeau*, 793 F.3d at 474. Then, the "plaintiff must prove that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Id.* at 476 (quotation marks and citations omitted).

An ADEA plaintiff "must prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true

---

artificially subdivide Mr. Dabbasi's claim into components: (1) removal from the Gasoline Coordinator position, (2) reneging on the E&S Advisor position, (3) the PIP, and (4) the termination. This is not a correct description of the claim, but more importantly, it is divorced from the facts."

reasons, but were a pretext for discrimination." *Id.* at 474 (quotation marks and citation omitted). In other words, the discrimination must be the "but-for" cause of the employment action. *Id.* at 475. The TCHRA standard is less demanding: "[A] plaintiff can prove discrimination . . . by establishing that either (1) the reason stated by the employer was a pretext for discrimination, or (2) the [employer's] reason, while true, was only one reason for its conduct and discrimination is another motivating factor." *Id.* (quotation marks and citations omitted).

We begin with whether Motiva has proffered a legitimate, non-discriminatory reason for Dabbasi's termination. Motiva alleged it terminated Dabbasi because of his unsatisfactory performance ratings and evaluations, "poor attitude," and failure to improve his work performance. Regarding his performance, Dabbasi was placed on the 2019 PIP because the one-on-one meetings were ineffective, and HR advised a PIP would be appropriate. Further, on multiple occasions, Motiva received complaints about Dabbasi's work ethic and overall attitude, including that he was "aggressive," "intimidating," and did not "listen," and that other employees "f[ound] it a challenge to speak frankly with him or question his conclusions." Motiva has thus satisfied its burden to proffer non-discriminatory reasons for Dabbasi's termination.

The final step in *McDonnell Douglas* is to decide whether the "proffered explanation is unworthy of credence." *Goudeau*, 793 F.3d at 476 (citations omitted). First, and perhaps the most suggestive of pretext, are Burnham's and Moore's oral statements to Dabbasi about "[r]otat[ing] younger people." This, combined with Motiva's decision to fill coordinator positions with "early-career" employees, undermines the veracity of Motiva's explanations. Yes, Motiva had a non-discriminatory explanation of what "early-career" meant, but when joined with a right given only to "younger people" to be rotated among jobs, that non-discriminatory reason

may be taken by a fact finder as not credible. Further, Motiva gave Dabbasi multiple President's Awards for his performance and told him everything was "hunky-dory," yet placed him on multiple PIPs and promised him a role that did not exist or "materialize."

"[T]he evidence [Dabbasi] has identified is sufficient to allow a finding that age discrimination was the cause of his termination in violation of the ADEA. That necessarily means the evidence meets the lesser 'motivating factor' standard under Texas law." *Id.* at 478. We are thus convinced there are genuine disputes of material fact such that Dabbasi's age-discrimination claim survives summary judgment and should proceed to a jury.

## II. *Disability-discrimination claim*

We reach a different conclusion as to Dabbasi's disability-discrimination claim. As an alternative claim, Dabbasi alleges Motiva violated the ADA and the TCHRA because he was terminated immediately following his return from medical leave. To establish a *prima facie* case of disability discrimination, Dabbasi must demonstrate "(1) he has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017). We assess whether a plaintiff had a disability at "the time of the adverse employment action." *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021) (citation omitted).

The district court explained that Dabbasi's disability-discrimination claim is based on his cardiac incident that occurred at the time Motiva made him aware of the PIP on July 18, 2019. Dabbasi, however, returned to work without any restrictions on August 12, 2019, and was terminated three days later. The court determined this series of events demonstrates Dabbasi was

not disabled at the time of his termination. We agree. Dabbasi has not presented a genuine dispute of material fact to survive summary judgment on his disability-discrimination claim.

We therefore REVERSE the district court's summary judgment dismissal of Dabbasi's age-discrimination claim and REMAND for further proceedings but AFFIRM the dismissal of his disability-discrimination claim.